UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JEFFREY R. HERSON, <br><br>   Plaintiff, <br><br> v. <br><br>THE CITY OF RENO, a municipal corporation, <br><br>   Defendant. | 3:11-CV-00403-LRH-VPC <br><br>ORDER |

Before the court are Plaintiff Jeffrey R. Herson's Motion for Preliminary Injunction (#12[1]) and Second Renewed Motion for Temporary Restraining Order (#20). Defendant City of Reno filed oppositions to each motion (#17, #21), to which Herson replied (#18, #26). Following a hearing on the motions, Herson additionally requested leave to file a supplemental brief (#28) and filed a "Notice to Court" with even further briefing (#29). The City has not yet responded.

**I. Facts and Procedural History**

Herson is in the business of operating billboards. With the permission of the owners of seven parcels in the City of Reno, Herson desires to erect new, permanent billboards on each parcel in order to generate income from the display of others' speech on portions of the billboards and to display his own noncommercial speech on the remaining portions. On April 28, 2011, Herson

---

[1] Refers to the court's docket number.

inquired at the Reno Planning Department as to whether he could display a permanent sign advocating the recall of Senator Harry Reid or a similar political message. According to Herson, he was told by Associate Planner Jerry Bowden that off-site signs have been banned in Reno since the passage of a voter initiative in 2000, and therefore it would be futile to apply for a permit. Bowden does not recall speaking with Herson but avers that his practice would have been to explain that new billboard structures are not allowed under the 2000 billboard ban. In any event, Herson has not applied for any sign permit or building permit. Instead, he filed this action challenging not only the off-site sign ban but also several other of the City's sign ordinances under the First and Fourteenth Amendments to the United States Constitution.

Although Herson organizes his challenges into seven claims for relief, he essentially asserts two types of claims. First, in his first and seventh claims for relief, Herson alleges that City's sign code regulates noncommercial speech based on content and gives greater protection to commercial speech over noncommercial speech. Second, in his second, third, fourth, fifth and sixth claims, he alleges that the City's licensing procedures for sign permits, variances, and major special use permits constitute unlawful prior restraints, by giving unbridled discretion to the decision-maker, not providing adequate time limitations for decision, and not requiring a reason for the denial.

The present motions for temporary and preliminary injunctive relief are predicated on somewhat different facts than those alleged in the complaint. His declarations submitted in support of the present motions omit any mention of his intent to use the billboards for commercial purposes. Instead, he declares only that he "desire[s] to display political speech" supporting his preferred candidate in the upcoming special congressional election on September 13, 2011, and relating to the Republican Nevada Caucus for the 2012 presidential election. Doc. #13, p. 2; Doc. #20, Exh. 2, p.2.

Aside from location, Herson's complaint and declarations provide no details regarding any other aspects of the signs. Nor does he declare that the signs would comply with any existing

1 regulations. Instead, he states conditionally that the signs "will be the highest number of feet above
2 ground . . . [and] the largest size that is permitted by a valid law that is consistent with the United
3 States Constitution," and that he "desire[s] to comply with all constitutional Reno and state
4 building and sign requirements." Doc. #13, p. 2; Doc. #20, Exh. 2, p.2; *accord* Doc. #1, ¶¶ 7, 11.

**II.    Standing**

Although this matter is before the court on Herson's motions for preliminary and temporary injunctive relief, serious questions exist as to Herson's standing to challenge the constitutionality of the City's sign ordinances, and the court must resolve those jurisdictional issues before reaching the merits of the case or granting any relief. The court is required to assess a plaintiff's standing "even if the parties fail to raise the issue." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230 (1990). "The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *Id.* at 231 (quoting *Allen v. Wright*, 468 US. 737, 750 (1984)) (brackets in original)).

To establish the "irreducible constitutional minimum" of Article III standing, a plaintiff must show: (1) he has suffered "injury in fact"; (2) a causal connection between that injury and the defendant's conduct; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotations, footnote, and citations omitted). Additionally, a plaintiff must ordinarily establish "prudential standing," which requires him to demonstrate that his claim "is sufficiently individualized to ensure effective judicial review." *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 891 (9th Cir. 2007). As to overbreadth claims under the First Amendment, however, the requirements of prudential standing are relaxed and the plaintiff need only show that he "can satisfactorily frame the issues on behalf of these non-parties." *Id.* Still, the Article III standing elements must exist as to

3

all claims. *Id.*

The Ninth Circuit's standing analysis in *Get Outdoors II* is particularly instructive here, as it involved claims that are materially similar to those asserted by Herson. There, a billboard company had filed twenty-four applications for permits, which the city reviewed and denied, citing its off-site sign ban and size and height restrictions. *Id.* at 889-90, 892. The company requested that the sign code be invalidated in its entirety and specifically challenged on First Amendment grounds the off-site sign ban as a content-based restriction on noncommercial speech, the size and height restrictions, and the city's procedures for reviewing applications as prior restraints. *Id.* at 892, 895. As to injury-in-fact, the court held that the plaintiff had standing to challenge "only those provisions that applied to it" and could not "leverage its injuries under certain, specific provisions to state an injury under the sign ordinance generally." *Id.* The court then held that the injuries attributable to the off-site ban and the height and size restrictions could be redressed only by a decision invalidating both provisions, as "an unfavorable decision on the merits of one claim may well defeat standing on another claim if it defeats the plaintiff's ability to seek redress." *Id.* at 893. After first determining that the city's height and size regulations were constitutional as content-neutral time, place and manner regulations and validly prohibited the construction of the proposed billboards, the court held that it lacked jurisdiction to consider the plaintiff's challenges to the off-site sign ban and its prior restraint claims for lack of redressability. *Id.* at 894-95.

### A. Content-Based Regulation Claims

Herson likewise challenges the City of Reno's off-site sign ban, exemptions, and other regulations as unconstitutional content-based restrictions that are seemingly preventing him from displaying signs. But unlike *Get Outdoors II*, Herson has never applied for a permit or taken any other concrete action to display any signs, and the City has never denied him a permit or taken any other official action to prevent him from displaying any signs. Thus, Herson is unable to show that he has suffered any injury in fact or that any asserted injury is fairly traceable to the actions of the

4

City. *See Lujan*, 504 U.S. at 560. A plaintiff challenging the constitutionality of sign ordinances "has standing to challenge only those provisions that applied to it." *Get Outdoors II*, 506 F.3d at 892. As the City has never applied any of its regulations to prevent Herson from erecting any signs, "his lawsuit is based on the [City's] policy in the abstract." *Madsen v. Boise State University*, 976 F.2d 1219, 1220 (9th Cir. 1992). "There is a long line of cases, however, that hold that a plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit." *Id.* (citations omitted).

The allegations and declarations submitted simply fail to establish an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations omitted). Rather, it is the opposite. Herson asserts only a general "desire" to display political signs on certain parcels, leaving others to speculate as to what physical manifestation his signs and structures might take and what ordinances may or may not be implicated.[2] But standing requires more than the mere existence of a regulation and the assertion of an indefinite intention to engage in prohibited activities. *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (finding plaintiffs' assertion that they "wish and intend to engage in activities prohibited by [the challenged statute]" were insufficient); *accord Lujan*, 504 U.S. at 564 ("'some day' intentions–without any description of concrete plans" are insufficient). In *Get Outdoors II*, 506 F.3d at 892, the court was able to identify concrete injuries in the city's denial

---

[2]The court declines to read Herson's factual allegations and declarations as setting forth any concrete information regarding the signs and structures he intends to erect. Herson's caveat-laden statements that he intends to erect the highest and largest sign "permitted by a *valid* law that is *consistent* with the United States Constitution" and "desire[s] to comply with all *constitutional* Reno and state building and sign requirements" are insufficient. Such conditional statements of unspecified and indefinite intent are illusory. Indeed, rather than comply with any existing regulations, it appears that Herson actually desires to disregard them. Any possible ambiguity in the above statements is of Herson's own design and is removed by his simultaneous request that this court strike down the entire sign code and specifically enjoin the City from "limiting . . . the signs Herson desires to display to any height, size, and location limitation stated in [RMC] Chapter 18.16." Doc. #1, pp. 5, 8; *accord* Doc. #12, p. 17.

5

of a permit and its enforcement of its off-site sign ban, and the ordinances cited by the city were identifiable as the causes of that injury.  Here, however, the court can only speculate as to whether the City would prevent Herson from erecting any signs and, if so, which ordinances the City might actually rely upon, because he has never applied for a permit or taken any other action requiring the City's response.  Even in this litigation Herson has failed to present any factual allegations or evidence that would allow the City to determine whether or not it would actually oppose the construction and display of any signs, and upon which provisions it would rely.  Thus, far from presenting a "well-defined controversy," as Article III requires, "[t]his case illustrates how the failure to make a concrete request can leave the dispute between the parties too nebulous for judicial resolution, because the precise nature of [Herson's] asserted injury–and the appropriate relief–are unclear to [the court]."  *Madsen*, 976 F.2d at 1221.

Herson's informal inquiry at the city planning department is also insufficient to establish standing.  Facing similar facts in *Madsen*, the Ninth Circuit held that a handicapped student's failure to "actually apply" for a permit or waiver deprived him of standing to challenge the school's parking policies, despite the fact that the student "made several calls . . . to inquire about the availability of free handicap permits and was told none were available."  976 F.2d at 1220.  Herson's situation is no better.  Although the Associate Planner allegedly referenced the City's off-site sign ban in response to Herson's inquiry, the informality and superficiality of this exchange provide little more than the ordinance's mere existence in establishing an injury in fact or defining the scope and contours of the controversy before the court.  By contrast, as the court recognized in *Madsen*, an application would have required the City to take formal action to grant or deny a permit or take other remedial steps.  *Id.* at 1222.  In the absence of such action, the court "cannot presume that they would have been unwilling to waive or change existing policies if faced with a concrete

request backed by a sound argument."³  *Id.*  Nor can the court presume that the City, if provided with additional information regarding Herson's proposed signs and given the opportunity to fully review his application, could not have lawfully prohibited Herson's signs "'simply by enforcing another, valid ordinance already on the books.'"  *Get Outdoors II*, 506 F.3d at 893 (quoting *Harp Adver. Illinois, Inc. v. Village of Chicago Ridge* 9 F.3d 1290, 1292 (7th Cir. 1993)).

To find standing in this case would allow an end run around the Ninth Circuit's decision in *Get Outdoors II*.  There, the court held that injury and causation could be established only as to the two regulations actually cited by the city in denying the billboard company's permit applications, the plaintiff could not "leverage" such injury to challenge the entire sign code, and the injury was redressable only if both regulations were invalidated.  506 F.3d at 892-93.  After rejecting the company's challenge to the height and size limitations on the merits, the court dismissed the challenge to the off-site sign ban for lack of redressability, given the existence of a valid alternative basis for prohibiting the construction of the proposed billboards.  *Id.* at 894.  Surely the billboard company could not have avoided this result simply by adopting Herson's strategy of filing suit without having taken any concrete action and without any formal response, thereby preemptively blocking any determination of whether the signs might have been lawfully prohibited under another, valid ordinance, eliminating plaintiff's standing.

The court further rejects the sole argument advanced by Herson to support standing—that it would have been futile to file a permit application given the existence of the ban.  *See* Doc. #18, p. 8.  "To begin with, it is unclear whether futility can, by itself, establish standing where it does

---

³In response to Herson's lawsuit, the City has attempted to institute remedial measures and has taken the express position that it would not subject Herson's political speech to the off-site ban. Although Herson disputes the validity and effectiveness of the City's efforts and insists that his signs would be prohibited, such arguments only highlight the speculative nature of this case and ironically place Herson in the position of insisting on being subjected to an injury that might not otherwise exist. In any event, it is undisputed that Herson has never taken any action requiring the City to actually enforce or decline to enforce the challenged ordinances.

7

not otherwise exist. It may well be that futility excuses some aspects of proving injury-in-fact while standing, a constitutional requirement, may not be so easily finessed." *Madsen*, 976 F.2d at 1222. Furthermore, the cases on which Herson relies all involved concrete action by both parties creating a well-defined controversy, and none support the notion that futility is a substitute for satisfying the *Lujan* requirements.

In *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814, 817 (9th Cir. 1996), the billboard operators actually constructed billboards without first obtaining permits, and the city filed an enforcement action in state court to compel their removal. In holding that the operators had standing to bring a federal action challenging the city's off-site sign ordinance and the permit process, the court expressly found each of the three *Lujan* elements were satisfied because (1) "the City actually brought an enforcement action"; (2) the injury was directly traceable to the city's attempt to enforce the ordinance and have the signs removed; and (3) an order invalidating the ordinance would likely enable the operators to maintain their existing signs. *Id.* at 818. Only then did the court cite futility in finding that the operators had standing to challenge the permit requirement as an unlawful prior restraint notwithstanding their failure to file a permit application, as an exception to the rule requiring exhaustion of administrative remedies.[4] *Id.*

*Shuttlesworth v. Birmingham*, 394 U.S. 147, 148-50 (1969), was not a civil suit at all, but rather an appeal of the petitioner's conviction for participating in a march without a permit. In overturning the conviction, the Court held that the licensing law at issue constituted an unlawful prior restraint and that the petitioner was permitted to "ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license." *Id.* at 151.

Finally, in *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007), another billboard case, the plaintiff actually filed a permit application and the city denied it. Similar to *Desert Outdoor*, the court rejected the city's argument that the plaintiff should have

---

[4]Herson's standing to assert prior restraint claims is discussed in Part B *infra*.

sought a writ of administrative mandamus before filing its federal action, holding that exhaustion of state law remedies is not required to pursue a section 1983 action. *Id.* at 900. But no standing or futility issues were discussed, except for the observation that ripeness was not a problem because "the alleged deprivation of Outdoor Media's constitutional rights was completed when Beaumont denied its permit applications." *Id.*

For the foregoing reasons, the court finds that Herson lacks standing under *Lujan* to challenge the City of Reno's sign ordinances regulating noncommercial speech based on content and favoring commercial speech over noncommercial speech. Accordingly, his first and seventh claims for relief shall be dismissed without prejudice for lack of jurisdiction. *See Get Outdoors II*, 506 F.3d at 894.

**B. Prior Restraint Claims**

Herson's challenges to aspects of the licensing process entail a somewhat different standing analysis, although it leads to the same conclusion. "A person subject to a licensing ordinance may make a facial, First Amendment attack on that ordinance without ever applying for a permit because the threat of the prior restraint itself constitutes an actual injury." *Get Outdoors II*, 506 F.3d at 894 (citing *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 759 (1988)). Recognized prior restraints include ordinances vesting unbridled discretion in the licensor and ordinances that do not impose adequate time limits on the decision-maker. *Id.* Herson alleges both types of claims.[5]

As discussed above, no claim is exempt from the Article III standing requirements of injury-in-fact, causation and redressability. *Id.* at 894-95. In the case of prior restraint claims, however, the threat of the prior restraint constitutes a cognizable injury-in-fact that is traceable to the

---

[5] Herson also alleges that the licensing regulations fail to require the City to give a reason for the denial of a sign permit or require written findings for supporting the administrator's approval of minor deviations. Doc. #1, ¶¶ 15, 17. Although it is unclear from Herson's pleadings, the court assumes for present purposes that such claims are intended as prior restraint claims related to his allegations regarding unbridled discretion.

9

challenged licensing ordinances. *Id.* at 895. Thus, a party "'who might have had a license for the asking' may challenge the licensing scheme as a prior restraint" without subjecting itself to the application process. *Id.* (quoting *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940)).

Nonetheless, Herson lacks standing to pursue his prior restraint claims because he cannot establish redressability for the same reasons discussed above as to his content-based claims. Like the plaintiff in *Get Outdoors II*, neither his filings nor his actions in this case have evinced any intent to file any permit applications that comply with any unchallenged, constitutionally valid provisions of the sign code. *Id.* Indeed, Herson has not filed any permit application at all or provided the court with any facts that would enable a determination as to whether his signs could be validly displayed. Thus, he "cannot show that [he] would *ever* be genuinely threatened by an unconstitutional prior restraint," as no change in the permit procedure would result in the approval of any permits. *Id.* "In other words, [Herson] is not a plaintiff who 'might have had a license for the asking.'" *Id.*

The court therefore concludes that Herson lacks standing to challenge the City of Reno's permitting procedures. Accordingly, his remaining claims for relief shall also be dismissed without prejudice for lack of jurisdiction.

IT IS THEREFORE ORDERED that Plaintiff's Complaint (#1) is hereby DISMISSED without prejudice for lack of jurisdiction.

IT IS SO ORDERED.

DATED this 19th day of August, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE